713 A.2d 1007

AMERICAN MOTORISTS INSURANCE COMPANY AND LUMBER-
MENS MUTUAL CASUALTY COMPANY, PLAINTIFFS–RE-
SPONDENTS AND CROSS–APPELLANTS, v. L–C–A SALES
COMPANY, JOEL SCHWARTZ, ELLEN SCHWARTZ AND JOHN
PICCIALLO, DEFENDANTS–APPELLANTS AND CROSS–RE-
SPONDENTS, AND MICHIGAN MUTUAL INSURANCE COM-
PANY, DEFENDANT–RESPONDENT AND CROSS–APPEL-
LANT.

JOHN PICCIALLO, PLAINTIFF, v. L–C–A SALES COMPANY,
JOEL SCHWARTZ, ELLEN SCHWARTZ AND STEVEN
HALL, DEFENDANTS.

Argued March 16, 1998—Decided June 15, 1998.

*Stacy L. Moore, Jr.*, argued the cause for appellants and cross–respondents L–C–A Sales Company, Joel Schwartz and Ellen Schwartz (*Parker, McCay & Criscuolo*, attorneys).

*Donald A. Beshada*, argued the cause for appellant and cross–respondent John Picciallo (*Cohen and Beshada*, attorneys, *Mr. Beshada* and *Charles R. Cohen*, on the briefs).

*James P. Richardson*, argued the cause for respondents and cross–appellants American Motorists Insurance Company and Lumbermens Mutual Casualty Company (*Sellar Richardson*, attorneys; *Mr. Richardson* and *Narinder S. Parmar*, on the brief).

*Elliott Abrutyn*, argued the cause for respondent and cross–appellant Michigan Mutual Insurance Company (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski*, attorneys; *Michael A. Sicola*, of counsel; *Warren Usdin*, on the briefs).

STEIN, J.

Plaintiff John Picciallo brought suit against his former employer L–C–A Sales Company (LCA) and certain individuals at LCA, alleging wrongful termination based on a violation of New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –49. The thrust of plaintiff's claim against LCA was that he was forced out of his position because of his age. This appeal presents the issue whether an "employee exclusion" contained in a comprehensive general liability (CGL) insurance policy precludes a corporate policyholder from securing coverage for damages arising from a claim of wrongful termination.

I

Picciallo worked as a salesman for LCA for over thirty years until his termination on December 31, 1991. Picciallo and LCA entered into several employment agreements during Picciallo's tenure at the company, the last of which was dated January 1, 1977. It superseded the prior employment agreements and provided that Picciallo would be given two weeks' written notice prior to termination.

According to Picciallo, Joel Schwartz, a partner at LCA, and Steven Hall, an employee, began to harass him in 1990 in an effort to force him into retirement. Picciallo alleged that a younger employee was hired in June 1991 to assume control over Picciallo's sales territory. Picciallo asserted that Hall began informing LCA customers that the new employee was replacing Picciallo because of his impending retirement. On December 17, 1991, Picciallo received a letter from Schwartz dated December 13, 1991, informing Picciallo of the termination of his employment effective two weeks after receipt of the letter. Pursuant to that letter, Picciallo's employment was terminated on December 31, 1991. At the time of his dismissal, Picciallo was sixty-seven years old.

In April 1992, Picciallo filed suit against LCA, Schwartz, Ellen Schwartz (another LCA partner), and Hall (collectively "LCA"). The gravamen of Picciallo's complaint was that LCA violated the

LAD by terminating him simply because of his age. Picciallo also alleged causes of action based on breach of contract, breach of the implied covenant of good faith, wrongful discharge, negligence, tortious interference with contract, respondeat superior, and intentional infliction of emotional distress. During discovery, Picciallo asserted that as a result of his wrongful dismissal from LCA he suffered emotional distress with resulting heart palpitations, sleepwalking, loss of libido, decrease in frequency of sex, constipation, bloating, headaches, diarrhea and stomach pains. Picciallo also complained of a loss of appetite that precipitated weight loss, indigestion and loss of cognitive skills, and alleged that he also suffered a stroke.

The events surrounding Picciallo's dismissal occurred at about the same time LCA changed its insurance carrier. From December 28, 1990, to December 28, 1991, LCA was insured under CGL and umbrella liability policies issued by Michigan Mutual Insurance Company (Michigan Mutual). From December 28, 1991, to December 28, 1992, LCA was insured under a CGL policy issued by American Motorists Insurance Company (American Motorists). During that same period, LCA was also insured under a commercial catastrophe policy issued by Lumbermens Mutual Casualty Insurance Company (Lumbermens). (Because both American Motorists and Lumbermens are part of the Kemper Companies, we refer to them collectively as "Kemper.") Both CGL policies issued by Michigan Mutual and Kemper contained a standard employee exclusion clause, providing that the insurance did not apply to "bodily injury" to "[a]n employee of the insured arising out of and in the course of employment by the insured."

Because the involvement of LCA's insurers significantly complicated the path of the litigation, we provide a brief summary of the intricate procedural history. LCA filed an answer to Picciallo's complaint in July 1992, and sought coverage and a defense from Kemper. Kemper disclaimed coverage on several grounds, including the employee exclusion, and filed a declaratory judgment action seeking a determination that no coverage was available

under its policy. The Picciallo suit and Kemper's declaratory judgment action were then consolidated for discovery purposes.

In May 1993, LCA moved for summary judgment against Kemper on the coverage issue, and Kemper cross-moved for summary judgment, asserting for the first time in support of its motion that Picciallo's dismissal occurred prior to the effective date of its coverage. The trial court denied both motions without prejudice, pending the completion of Picciallo's deposition. Kemper later amended its complaint to include Michigan Mutual as a defendant. After Picciallo's deposition, LCA filed a second motion for summary judgment, and both Kemper and Michigan Mutual responded with their own summary judgment motions. Reversing its prior determination, the trial court ruled that Picciallo's cause of action arose prior to December 31, 1991, and that both Kemper and Michigan Mutual had a duty to defend LCA. Subsequently, the trial court vacated that decision as well.

Ultimately, the trial court granted summary judgment to both insurance companies, holding that the language of the employee exclusion was clear and precluded coverage for Picciallo's claim. On the same date, Picciallo settled with LCA for $130,000, of which LCA agreed to pay $25,000, and LCA assigned to Picciallo its rights, if any, to coverage for the balance of Picciallo's claim.

In an unreported decision, the Appellate Division affirmed the grant of summary judgment in favor of Kemper and Michigan Mutual, but held that coverage was not precluded by the employee exclusion. Extending the reasoning of *Cairns v. City of East Orange*, 267 *N.J.Super.* 395, 631 *A.2d* 978 (App.Div.1993), the court determined that Picciallo's termination did not "arise out of his employment" and concluded that the employee exclusion "suffices only to exclude workers['] compensation claims." The court determined that Picciallo's claim was an "occurrence" within the meaning of the insurance polices, that the date of the occurrence was the date on which Picciallo *received* the termination letter (thus bringing the claim within the period of Michigan Mutual's coverage and excluding coverage by Kemper), but that LCA's

delay of nearly two years before notifying Michigan Mutual of the suit violated the policy's notice requirement and precluded coverage.

We granted LCA's petition for certification, Picciallo's petition for certification, Kemper's cross-petition for certification, and Michigan Mutual's cross-petition for certification. 151 *N.J.* 468, 700 *A.*2d 880 (1997).

## II

The Michigan Mutual and Kemper CGL policies each contain an exclusion for workers' compensation claims, and an employee exclusion, that state:

This insurance does not apply to:

. . . .

d. Any obligation under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured. . . .

Additionally, each policy provides that the employee exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity. . . ."

The employee exclusion contained in the Kemper and Michigan Mutual policies is the standard form of employee exclusion first introduced by insurers in the 1970s. See Jonathan S. Reed, *Shredding the Employment Exclusion,* 152 *N.J.L.J.* 324 (April 27, 1998). As the number of employment-related discrimination and harassment claims has increased in recent years, the insurance industry strengthened the employee exclusion by inserting specific language barring coverage for injuries arising out of discrimination, termination and harassment of employees. *Ibid.* We note that that form of expanded employee exclusion clause was used by Michigan Mutual in the umbrella policy it issued to LCA. Insurers have also begun to offer separate Employment Practices Liability Insurance (EPLI) policies, which provide coverage for employment-related claims. *Ibid.; see also* Paul E.B. Glad & Richard V.

Rupp, *Employment–Related Liability Claims and Insurance,* 716 *PLI/Comm* 121, 124 (1995)(describing advent of employment exclusions and recent development of EPLI policies).

Michigan Mutual and Kemper assert that the Appellate Division erred in finding the employee exclusion to be inapplicable. According to the insurance companies, the facts underlying Picciallo's complaint clearly arose out of his employment and thus bring the claim within the plain language of the employee exclusion. They contend that the Appellate Division's conclusion that the employee exclusion bars coverage only for workers' compensation claims ignores the effect of the separate workers' compensation exclusion contained in each policy.

Picciallo and LCA argue that because Picciallo's bodily injury resulted not from his work for LCA, but from his wrongful termination, his claim did not arise out of and in the course of his employment and therefore is not subject to the exclusion. They also note that Picciallo filed suit after his dismissal, and therefore assert that his status as a former employee avoids the effect of the exclusion because his claim was not brought "in the course of his employment." They point to the availability of insurance policies containing more specific employee exclusions, and the presence of such an exclusion in Michigan Mutual's umbrella policy, to bolster the argument that the employee exclusion in Michigan Mutual's CGL policy does not apply.

The critical phrase "arising out of," which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. "The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided." *Records v. Aetna Life & Cas. Ins.,* 294 *N.J.Super.* 463, 468, 683 *A.2d* 834 (App.Div.1996)(quoting *Westchester Fire Ins. Co. v. Continental Ins. Cos.,* 126 *N.J.Super.* 29, 38, 312 *A.2d* 664 (App.Div.1973), *aff'd o.b.,* 65 *N.J.* 152, 319 *A.2d* 732 (1974)), *certif. denied,* 151 *N.J.* 463, 700 *A.2d* 876 (1997); *see also Allstate Ins.*

Co. v. Moraca, 244 N.J.Super. 5, 13 n. 1, 581 A.2d 510 (App.Div.1990)(noting that exclusionary language in homeowner's policy barring coverage for injuries "arising out of" ownership or use of motor vehicle was enforceable if "accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of an automobile")(quoting *Hogle v. Hogle*, 167 *Conn.* 572, 356 *A.*2d 172 (1975)).

Only one reported New Jersey decision has addressed the "arising out of" language in the context of an employee exclusion contained in a CGL policy. In *Schmidt v. Smith*, 294 *N.J.Super.* 569, 574–75, 684 *A.*2d 66 (App.Div.1996), the plaintiff sued her employer, PAV, alleging various claims relating to acts of sexual harassment, and a jury verdict was returned in her favor. PAV initially sought coverage under both its CGL policy (that contained the standard employee exclusion) and under the employer's liability section of a workers' compensation policy. The Appellate Division agreed that coverage should not have been afforded to PAV under the CGL policy, noting that PAV "concede[d] in its appellate brief that, inasmuch as plaintiff's judgment against it was based upon the jury's finding of a hostile work environment, PAV 'does not seek coverage for the judgment under the general liability policy.'" *Id.* at 580, 684 *A.*2d 66. The court also noted that with regard to the claims asserted against PAV's president and chief executive officer, the CGL employee exclusion barred coverage except for pre-employment injury to the plaintiff. *Id.* at 586, 684 *A.*2d 66. Although the *Schmidt* court noted that coverage was not available under the CGL policy, the court found that PAV was entitled to coverage under the employer's liability section of its workers' compensation policy. *Id.* at 583, 684 *A.*2d 66. It reasoned that an exclusion contained in the policy was not applicable to liability for sexual harassment claims when the liability was imposed vicariously and not directly. *Ibid.*

Simultaneously with the filing of this opinion, we affirmed the judgment of the Appellate Division. *Schmidt v. Smith*, 155 *N.J.* 44, 713 *A.*2d 1014 (1998). We held that pursuant to *N.J.S.A.*

34:15–72, PAV was required to obtain coverage for any obligation incurred to compensate for an employee's bodily injuries. *Id.* at 51, 713 *A.*2d 1018. We determined that the employer's liability section of the workers' compensation policy was a "gapfiller," providing coverage for employees' job-related bodily injuries whether or not covered under the Workers' Compensation Act. *Ibid.* We concluded that "[t]o the extent [the exclusion] would otherwise operate to deny coverage for such [bodily] injuries, the exclusion violates the public policy underlying the workers' compensation scheme and is therefore void." *Id.* at 52, 713 *A.*2d 1018. Thus, our holding in *Schmidt* was based on the invalidity of an exclusion found in a workers' compensation insurance policy that we found to be inimical to the purposes of New Jersey's system of workers' compensation. Pursuant to *Schmidt,* LCA may have had coverage for Picciallo's claims under the employer's liability section of its workers' compensation policy. That issue is not before us and we do not address it.

In concluding that Picciallo's claim did not arise out of or in the course of his employment and was therefore not precluded from coverage by the employee exclusion, the Appellate Division relied on *Cairns, supra,* 267 *N.J.Super.* 395, 631 *A.*2d 978. In *Cairns,* the Appellate Division addressed the compensability under the Workers' Compensation Act (Act) of an employee's psychiatric injuries resulting from his receipt of a layoff notice. Cairns had been employed by the City of East Orange for over thirty-three years. Shortly after the City decided to eliminate his department, Cairns and twenty other departmental employees were informed that their employment would be terminated the following month. Under the Act, an employer must pay an employee compensation for personal injuries, occupational disease, or death "arising out of and in the course of his employment." *Id.* at 399, 631 *A.*2d 978 (quoting *N.J.S.A.* 34:15–30 and *N.J.S.A.* 34:15–7). Relying on *Walck v. Johns–Manville Products Corp.,* 56 *N.J.* 533, 556, 267 *A.*2d 508 (1970) and *Goyden v. State Judiciary,* 256 *N.J.Super.* 438, 458, 607 *A.*2d 651 (App.Div.1991), *aff'd o.b.,* 128 *N.J.* 54, 607

A.2d 622 (1992), the *Cairns* court determined that the meaning of the "arising out of" language in the Act depended to a certain extent on whether the events had some "essential relation to the work or its nature" or were "peculiar" to the workplace. 267 *N.J.Super.* at 400–01, 631 *A.2d* 978. The court held that receipt of a layoff notice was neither peculiar to the plaintiff's employment nor essentially related to the nature of plaintiff's work, noting that "layoff decisions and notices related to terminations are common to all employment." *Id.* at 401, 631 *A.2d* 978.

However, *Cairns* is distinguishable from the issue presented by this appeal because it dealt with the interpretation of the Workers' Compensation Act rather than the application of an employee exclusion in a CGL insurance policy. Indeed, the holding of *Cairns* was based largely on the "underlying policy considerations rather than the clear language of the Act." *Id.* at 399, 631 *A.2d* 978. The court concluded that "[t]o permit recovery in these circumstances would place the employer in the position of being an insurer of the general health and welfare of the employee and unduly subject all employers to innumerable potential claims." *Id.* at 406, 631 *A.2d* 978. Because *Cairns,* like *Schmidt, supra,* 155 *N.J.* at 52, 713 *A.2d* 1018, reached a result that was informed primarily by the policies underlying the Workers' Compensation Act, it does not govern the disposition of this appeal. Unlike the layoff in *Cairns,* this was an employee-specific layoff notice allegedly targeted at Picciallo because of his age. The *Cairns* reasoning is that the general economic risks of employment termination arising from an employer's effort to downsize do not equate with an industrial injury. Picciallo's injuries, however, were not the result of general economic risks.

More instructive is the clear weight of authority from other jurisdictions that favors enforcement of the employee exclusion to bar coverage for claims similar to that advanced by plaintiff. In *Meadowbrook v. Tower Ins. Co.,* 559 *N.W.2d* 411, 413 n. 1 (Minn. 1997), several employees filed a complaint against their employer alleging, among other claims, sexual harassment and wrongful

termination. The policy at issue in that case contained an employee exclusion almost identical to that found in the Michigan Mutual and Kemper policies, providing that the insurance was inapplicable to "bodily injury to any employee of the insured arising out of and in the course and scope of his employment by the insured." *Id.* at 418. The court noted that the phrase "arising out of" in an insurance policy meant "causally connected with" and not "proximately caused by." *Id.* at 419. Because some of the conduct complained of took place outside the scope of employment, including telephone calls made by the employer to one of the plaintiffs' homes, the plaintiffs argued that the sexual harassment claim did not fall within the scope of the employee exclusion. *Id.* at 420 & n. 22. The court observed that in assessing whether an insurer has a duty to defend, the appropriate focus must be on the essence of the cause of action rather than on the conduct relied on in support of the claim. *Id.* at 420. Noting that the plaintiffs' sexual harassment claim in that case asserted that the plaintiffs' working environment had become hostile, the court concluded that "[i]t is incongruous to hold that such a claim can arise anywhere but in the course and scope of ... plaintiffs' employment," and found that the exclusion applied. *Ibid.*

In *McLeod v. Tecorp International, Ltd.,* 318 *Or.* 208, 865 *P.*2d 1283, 1286–87 (1993), the Supreme Court of Oregon interpreted an insurance policy that contained workers' compensation and employee exclusions essentially equivalent to those found in the Michigan Mutual and Kemper policies. The corporate defendant sought coverage for the plaintiff's claims of wrongful discharge and intentional infliction of emotional distress stemming from acts of sexual harassment during her employment. Observing that even employees covered by workers' compensation may be able to assert bodily injury claims against an employer under certain circumstances, the court found that "[t]he manifest purpose of [the employee exclusion] is to exclude from coverage bodily injury claims of employees that arise out of and in the course of their employment, but that are not workers' compensation claims, un-

employment compensation claims, disability claims, or claims under similar laws." *Id.* 865 *P.*2d at 1287. Because the plaintiff's allegations concerned events taking place only during her employment and while she was at work, the court concluded that the employee exclusion barred coverage for the claims. *Id.* 865 *P.*2d at 1287–88.

Other federal and state courts that have addressed this issue have reached the same conclusion. *See, e.g., Western Heritage Ins. Co. v. Magic Years Learning Ctrs. & Child Care, Inc.*, 45 *F.*3d 85, 90 (5th Cir.1995)(holding employee exclusion barred coverage for former employee's sexual harassment claims because "the claims arose out of the course of [employee's] employment"); *Jefferson–Pilot Fire & Cas. Co. v. Sunbelt Beer Distr., Inc.*, 839 *F.Supp.* 376, 380 (D.S.C.1993)(noting that employee exclusion barred coverage for racial discrimination action "[b]ecause [employee's] action arose out of her employment. . . ."); *West Am. Ins. Co. v. Bank of Isle of Wight*, 673 *F.Supp.* 760, 766 (E.D.Va.1987)(noting in wrongful termination action that plain language of employee exclusion precluded coverage where "[e]ach of the events which gave rise to [the employee's] termination took place during the period of his employment. . . ."); *Omark Indus. v. Safeco Ins. Co. of Am.*, 590 *F.Supp.* 114, 120 (D.Or.1984)(finding employee exclusion unambiguous and precluding coverage in sex discrimination case); *Watson v. Town of Arcadia*, 542 *So.*2d 1168, 1171 (La.Ct.App.) (applying employee exclusion and noting "[d]amages for an alleged wrongful discharge clearly arise out of and in the course of one's employment"), *writ denied*, 548 *So.*2d 1234 (La.1989); *Board of Educ. v. Continental Ins. Co.*, 198 *A.D.*2d 816, 604 *N.Y.S.*2d 399, 400 (1993)(finding teacher's sexual harassment and retaliatory discharge action arose out of employment and coverage was barred by employee exclusion, even though "some of the alleged acts of sexual harassment [took place] away from the school. . . ."); *Aberdeen Ins. Co. v. Bovee*, 777 *S.W.*2d 442, 444 (Tex.Ct.App.1989) (enforcing plain language of employee exclusion in liability policy to deny coverage for sexual

harassment claim, noting that employee's action "was against her employer for acts arising out of her employment").

### III

We have observed that "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 95, 698 *A.2d* 9 (1997). We also have held that ambiguities in policy language will be resolved in favor of the insured in order to give effect to the insured's reasonable expectations. *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175, 607 *A.2d* 1255 (1992); *DiOrio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 269, 398 *A.2d* 1274 (1979). Under certain circumstances, even the plain meaning of policy language may be overcome if it conflicts with the reasonable expectations of the insured. *Werner Indus., Inc. v. First State Ins. Co.*, 112 *N.J.* 30, 35–36, 548 *A.2d* 188 (1988). Nevertheless, we adhere to the principle that an insurance policy should generally be interpreted "according to its plain and ordinary meaning," *Voorhees, supra*, 128 *N.J.* at 175, 607 *A.2d* 1255 (citing *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.2d* 1257 (1990)), so as not to disregard the "clear import and intent" of a policy exclusion. *Westchester Fire Ins. Co., supra*, 126 *N.J.Super.* at 41, 312 *A.2d* 664. We are persuaded that the "arising out of and in the course of employment" language of the CGL policy employee exclusion is clear and unambiguous, and that it precludes coverage for Picciallo's wrongful discharge claim.

Picciallo's amended complaint alleged that in 1990, Joel Schwartz, Steven Hall and LCA began harassing him to induce him to retire, harassment that was "motivated by an intention to create an environment under which plaintiff would not continue to work and would be forced to resign...." Discovery revealed that the facts alleged by plaintiff in support of his claim included humiliation of Picciallo at a June 1990 sales meeting, frequent inquiries by supervisory personnel about when Picciallo would

retire, harassing telephone calls, and LCA's hiring of a young employee who was introduced to customers as Picciallo's "replacement" while Picciallo was still on the job. As the record demonstrates, Picciallo's cause of action for wrongful termination based on age discrimination unquestionably arose out of and in the course of his employment, as did the essential factual allegations on which the cause of action was predicated. We agree with the Minnesota Supreme Court's observation that it would be "incongruous to hold that such a claim can arise anywhere but in the course and scope" of employment. *Meadowbrook, supra,* 559 *N.W.*2d at 420.

We note that whether specific acts of harassment or discrimination took place outside the workplace, such as harassing telephone calls to Picciallo's home, is of no consequence because such conduct nevertheless would have arisen out of the employment relationship between Picciallo and LCA. See *ibid.* (noting that acts occurring outside the workplace did not change nature of claim for hostile work environment); *Continental Ins. Co., supra,* 604 *N.Y.S.*2d at 400 (applying employee exclusion although some alleged acts of harassment occurred outside workplace). We also reject the argument that because Picciallo is a *former* employee, the "in the course of employment" language of the employee exclusion renders the exclusion inapplicable.

Aside from the plain language of the employee exclusion, the presence of the workers' compensation exclusion immediately preceding the employee exclusion demonstrates that the objective of the CGL policy was to exclude from coverage all claims—whether falling within or beyond the workers' compensation system—"arising out of and in the course of" Picciallo's employment. Were the employee exclusion interpreted only to bar coverage for workers' compensation claims, the workers' compensation exclusion in LCA's CGL policy would be redundant. See *Omark Indus., supra,* 590 *F.Supp.* at 120 (disputing notion that "underlying claims must be covered under workers' compensation in order to fall within an employee exclusion clause"); *Meadowbrook, su-*

*pra*, 559 *N.W.*2d at 420 n. 21 (finding separate workers' compensation exclusion defeats argument that employee exclusion precludes only workers' compensation claims); *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 124 *N.C.App.* 232, 477 *S.E.*2d 59, 71 (1996) (noting that workers' compensation and employee exclusions "in tandem" preclude liability for all injuries arising out of and in the course of employment); *McLeod, supra*, 865 *P.*2d at 1287 (noting that presence of workers' compensation and employee exclusion "exclude[s] from liability insurance coverage all bodily injury claims of employees that arise from their employment"). We also note that coverage for claims analogous to those asserted by Picciallo is now specifically provided by EPLI policies that are available to employers. *See* Glad & Rupp, *supra*, 716 *PLI/Comm* at 124; *see also* Nancy Ritter, *Employer Liability: The Rush is on for Insurance*, N.J. Law., Feb. 2, 1998, at 1 (stating that number of companies in New Jersey purchasing EPLI polices has "exploded" in past year).

We emphasize that because the relevant contract is a CGL policy rather than a workers' compensation policy, the public policy considerations underlying the workers' compensation system are not implicated. See *Schmidt, supra*, 155 *N.J.* at 52, 713 *A.*2d 1018. We reject LCA's claim that because Michigan Mutual's umbrella policy contained the more recent and more specific employee-exclusion language, Michigan Mutual should have anticipated that Picciallo's claim would be covered by its CGL policy. We are unpersuaded that the added disclaimer in the umbrella policy represents a concession that defeats the plain language and intent of the CGL policy. More likely, the added disclaimer reflects Michigan Mutual's intention to assure that such claims would not be covered by the excess policy.

Our resolution of the applicability of the employee exclusion is dispositive of this appeal. Therefore, we decline to address the remaining issues concerning the date of the occurrence, whether Kemper's delay in raising the date of the occurrence estops it from denying coverage on that basis, and whether LCA's delay in

notifying Michigan Mutual of Picciallo's claim bars LCA from seeking coverage from Michigan Mutual.

### IV

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN COLEMAN—7.

*Opposed*—None.