**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1910-21

WESTFIELD AREA YMCA,
YMCA OF MADISON
NEW JERSEY, INC., d/b/a
MADISON AREA YMCA,
LAKELAND HILLS FAMILY
YMCA, WYCKOFF FAMILY
YMCA, INC., and WEST
MORRIS YMCA,

     Plaintiffs-Appellants,

v.

THE NORTH RIVER
INSURANCE COMPANY,
UNITED STATES FIRE
INSURANCE COMPANY,
and PHILADELPHIA
INDEMNITY INSURANCE
COMPANY,

     Defendants-Respondents.

_____

Argued November 28, 2023 – Decided February 21, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2584-20.

Carl A. Salisbury argued the cause for appellants (Bramnick, Rodriguez, Grabas, Arnold & Mangan, attorneys; Carl A. Salisbury, on the briefs).

Kristin V. Gallagher argued the cause for respondents The North River Insurance Company and United States Fire Insurance Company (Kennedys CMK LLP, attorneys; Kristin V. Gallagher, Mark F. Hamilton, and Tyler J. Pierson, of counsel and on the brief).

Stephen E. Goldman (Robinson & Cole LLP) of the Connecticut bar, admitted pro hac vice, argued the cause for respondent Philadelphia Indemnity Insurance Company (Walsh Pizzi O'Reilly Falanga LLP, and Stephen E. Goldman, attorneys; Liza M. Walsh and William T. Walsh, Jr., on the brief).

PER CURIAM

In this insurance coverage action, five YMCAs, plaintiffs Westfield Area YMCA, YMCA of Madison New Jersey, doing business as Madison Area YMCA, Lakeland Hills Family YMCA, Wyckoff Family YMCA Inc., and West Morris Area YMCA, appeal from two January 18, 2022, Law Division orders granting summary judgment dismissal of their complaint against their respective insurance companies, defendants the North River Insurance Company (North River), United States Fire Insurance Company (US Fire), and Philadelphia

2

Indemnity Insurance Company (Philadelphia), three commercial property and casualty insurance carriers.

The complaint sought business interruption coverage under the respective commercial property insurance policies for business income losses sustained during the pandemic caused by the SARS-CoV-2 virus (the COVID-19 pandemic) that prompted the Governor to issue mandatory closure orders. In dismissing the complaint, Judge Alan G. Lesnewich determined plaintiffs' business income losses were not related to any "direct physical loss of or damage to" the insured properties, prerequisites to coverage. The judge also ruled coverage was barred by the virus exclusions contained in the policies and the doctrine of regulatory estoppel did not invalidate the exclusions. We agree and affirm substantially for the reasons articulated in the judge's statement of reasons.

I.

We glean these facts from the motion record, viewed in the light most favorable to plaintiffs. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). Plaintiffs are non-profit community service organizations that operate numerous facilities throughout the State to promote their mission of advancing

3

youth development, healthy living, and social responsibility. To that end, plaintiffs provide a variety of programs and services in their facilities, including child-care, early childhood education, summer youth camps, youth and teen sports programs, youth and teen counseling, health and wellness classes for adults, and physical fitness training centers. Plaintiffs' facilities are insured by the insurance policies at issue in this case (the insured properties).

Defendant North River issued a commercial package property insurance policy to plaintiff Westfield YMCA for the policy period December 31, 2019, to December 31, 2020. Defendant US Fire issued commercial package property insurance policies to plaintiffs Madison YMCA from December 31, 2019, to December 31, 2020, to West Morris YMCA from January 1, 2020 to January 1, 2021, and to Lakeland Hills YMCA from March 31, 2019 to March 31, 2020. Defendant Philadelphia issued a commercial package property insurance policy to plaintiff Wyckoff YMCA from April 1, 2019 to April 1, 2020.

All the relevant policy provisions in the various insurance policies are identical. The Building and Personal Property Coverage Form provides that defendants "will pay for direct physical loss of or damage to Covered Property at the [plaintiffs'] premises . . . caused by or resulting from any Covered Cause

4

of Loss," which is defined as "direct physical loss unless the loss is excluded or limited in [the policies]."

The policies' Business Income (And Extra Expense) Coverage Form provides that:

> [Defendants] will pay for the actual loss of Business Income [plaintiffs] sustain due to the necessary "suspension" of [plaintiffs'] "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at [the insured properties] and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.[1]

"Business Income" is defined as "[n]et [i]ncome ([n]et [p]rofit or [l]oss before income taxes) that would have been earned or incurred;" and "[c]ontinuing normal operating expenses incurred, including payroll."

The policies contain two exclusions that are germane to this appeal. First, the "Exclusion of Loss due to Virus or Bacteria" Endorsement (the Virus

---

[1] The policies also include "Extra Expense Coverage," which covers "necessary expenses [plaintiffs] incur during the 'period of restoration' that [plaintiffs] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." However, such coverage is only provided if "Business Income Coverage applies at [the insured properties]."

A-1910-21

Exclusion) provides that defendants "will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease." The Virus Exclusion "applies to all coverage under all forms and endorsements . . . , including but not limited to forms or endorsements that cover . . . business income[ and] extra expense."

Second, in the "Causes of Loss – Special Form," the policies contain an Ordinance Or Law Exclusion, which explicitly states that defendants "will not pay for loss or damage caused directly or indirectly" by "[t]he enforcement of or compliance with any ordinance or law . . . [r]egulating the . . . use . . . of any property." The Ordinance Or Law Exclusion "applies whether the loss results from . . . [a]n ordinance or law that is enforced even if the property has not been damaged" and "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

Finally, the policies issued by North River and US Fire contained an additional "Food Contamination and Communicable Disease Coverage Endorsement," providing that:

> This endorsement modifies insurance provided under the following:

A-1910-21

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

. . . .

(1) If one or more of [plaintiffs' premises are] . . . ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of "food contamination" or "communicable disease", [North River or US Fire] will pay:

(a) The loss of Business Income [plaintiffs] sustain due to the necessary "suspension" of [plaintiffs] "operations" as a result of the "food contamination" or "communicable disease". The coverage for Business Income will begin 24 hours after [plaintiffs] receive notice of closing from the Board of Health or any other governmental authority[.]

. . . .

2. "Communicable disease" means any disease that is transmissible by infection or contagion through contact with humans or animals, or through bodily fluids, contaminated objects, airborne inhalation or a similar agent.

Beginning March 2020, Governor Philip D. Murphy issued a series of executive orders in response to the COVID-19 pandemic, requiring the closure of all non-essential for-profit and non-profit businesses in New Jersey. First,

7

Executive Order 103, issued on March 9, 2020, identified COVID-19 as a "contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus," acknowledged the rapid growth of the COVID-19 pandemic and the occurrence of confirmed cases in New Jersey and nearby states, declared that "a Public Health Emergency and State of Emergency exist[ed] in the State of New Jersey," and implemented measures to protect the public in light of the emergency.  Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020).

Next, Executive Order 104, issued on March 16, 2020, among other provisions, ordered the closure of "[a]ll public, private, and parochial preschool program premises" as well as the closure of all "[g]yms[,] fitness centers and classes" for as long as the order remains in effect.  Exec. Order No. 104 (Mar. 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020).  Five days later, Executive Order 107, issued on March 21, 2020, superseded Executive Order 104's "operative paragraphs" and closed to the public, among other establishments, "[t]he brick-and-mortar premises of all non-essential retail businesses," like plaintiffs'.

Exec. Order No. 107 (Mar. 21, 2020), 52 N.J.R. 554(a) (Apr. 6, 2020). The mandatory closures were subsequently lifted once the emergency abated.[2]

Plaintiffs sought coverage for the business income losses incurred during the mandatory closures, but defendants denied the claims. As a result, on August 13, 2020, plaintiffs filed a two-count complaint against defendants, commencing this action. In the complaint, plaintiffs did not allege any direct physical loss or damage to their facilities. Instead, plaintiffs asserted that in exchange for "substantial annual premiums," defendants entered into "all risks" insurance contracts with them, in which defendants promised to "protect [plaintiffs] from losses and catastrophes, including the interruption or closure of their business operations due to the physical loss of use, loss of functionality, or loss of access to their respective facilities." However, according to the complaint, defendants "failed or refused to provide coverage for [plaintiffs'] business income losses occasioned by the Executive Order [s]hutdown for various reasons, none of which comport or comply with the law of New Jersey." In count one, plaintiffs sought a declaratory judgment, requiring defendants to provide full coverage for

---

[2] On June 26, 2020, Executive Order 157, which went into effect on July 2, 2020, authorized the limited reopening of "[a]ll retail establishments" subject to mandated precautions to minimize the spread of the SARS-CoV-2 virus. Exec. Order No. 157 (June 26, 2020), 52 N.J.R. 1455(a) (Aug. 3, 2020).

their losses.  In count two, plaintiffs sought compensatory and consequential damages for defendants' breach of contract.

Ultimately, defendants moved for summary judgment, which was opposed by plaintiffs.  Following oral argument, Judge Lesnewich granted defendants' motions and issued memorializing orders with identical statements of reasons on January 18, 2022.[3]  In his decision, after outlining the governing legal principles, the judge first determined that summary judgment was appropriate because plaintiffs made no claim for "direct physical loss."  The judge explained:

> The [p]olicies' Business Income coverage and Extra Expense coverage both require, as a prerequisite to coverage, "direct physical loss of or damage to [insured] property" that is "caused by or result[ing] from a Covered Cause of Loss."  The term "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in th[e] policy." Significantly, [p]laintiffs have not made a claim for the repair or replacement of any of their respective property. That fact is not disputed. That alone is reason for the court to grant summary judgment.
>
> [(first and second alteration in original).]

---

[3]  One order pertained to North River's and US Fire's motions, and the other pertained to Philadelphia's motion.

Turning to the exclusions, the judge concluded the Virus Exclusion was enforceable and barred plaintiffs' claim. In reaching that conclusion, the judge rejected plaintiffs' contention that the exclusion did not apply because "the Executive Orders, not COVID-19, were the proximate cause of [plaintiffs'] losses." In that regard, the judge looked to other courts that had decided "the issue of causation in this context" and relied on our opinion in New Jersey Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440 (App. Div. 2019), where we stated:

> When there is a conflict as to whether, for coverage purposes, losses should be considered to be "caused by" an excluded risk or by a covered peril, the New Jersey courts employ the efficient proximate cause test, which is sometimes referred to as Appleman's Rule. . . .
>
> Under this test, if an exclusion "bars coverage for losses caused by a particular peril, the exclusion applies only if the excluded peril was the 'efficient proximate cause' of the loss." "Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss . . . ."
>
> [Id. at 460-61 (emphasis omitted) (citations omitted) (first quoting Zurich Am. Ins. Co. v. Keating Bldg. Corp., 513 F. Supp. 2d 55, 70 (D.N.J. 2007); and then quoting Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 257 (2004)).]

11

Consistent with other courts, Judge Lesnewich determined the Virus Exclusion "unambiguously bar[red] coverage of [p]laintiffs' claims" because the "alleged losses were caused by the Coronavirus, . . . in response to which Governor Murphy issued the [Executive] Orders." The judge explained:

> Plaintiffs cannot show that the Executive Orders, and not the COVID-19 virus, were the proximate cause of its losses. The Executive Orders were issued for the sole reason of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey. Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, [p]laintiffs' losses are tied inextricably to that virus and are not covered by the policies.

The judge also rejected plaintiffs' contention that "the Virus Exclusion [was] void under the theory of regulatory estoppel." According to the judge, plaintiffs "grounded their regulatory estoppel argument on a statement in an Insurance Services Office ('ISO')[4] circular" indicating that losses due to viruses

---

[4] ISO "is an influential [nonprofit] organization within the insurance industry that promulgates standard form insurance policies, including [commercial general liability] policies, that insurers across the country use to conduct their business." Mac Prop. Grp. LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 32 n.7 (App. Div. 2022) (alterations in original) (quoting Christopher C. French, Construction Defects: Are They 'Occurrences'?, 47 Gonz. L. Rev. 1, 5 n.7 (2011/2012)), certif. denied, 252 N.J. 258 and 252 N.J. 261 (2022).

were already precluded by the pollution exclusion. Plaintiffs argued that the ISO circular "misrepresented" to regulators that the proposed virus exclusion language in the insurance policies was merely a "clarification," when in fact the language allegedly resulted in a "reduction in existing coverage."

The judge reasoned that "putting aside the fact that . . . regulatory estoppel does not void a clear and unambiguous provision such as the Virus Exclusion," plaintiffs failed to demonstrate that insurers misrepresented to regulatory authorities the impact and scope of the exclusion to justify a finding of regulatory estoppel. See Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am., 134 N.J. 1, 30 (1993) (declining to enforce an exclusion clause because "[t]o do so would contravene this State's public policy requiring regulatory approval of standard industry-wide policy forms to assure fairness in rates and in policy content, and would condone the industry's misrepresentation to regulators in New Jersey and other states concerning the effect of the clause").

In this ensuing appeal, plaintiffs raise the following points for our consideration:

> I.[5]  THE TRIAL COURT ERRED IN FAILING TO
> FOLLOW THIS COURT'S CONTROLLING
> AUTHORITY THAT "DIRECT PHYSICAL LOSS OF

---

[5]  We have omitted the standard of review and renumbered the point headings accordingly.

A-1910-21

OR DAMAGE TO" PROPERTY DOES NOT REQUIRE PHYSICAL ALTERATION OF COVERED PROPERTY BUT, INSTEAD, IS SATISFIED BY LOSS OF USE OF THE PROPERTY.

II. THE TRIAL COURT APPLIED THE VIRUS EXCLUSION, AS A MATTER OF LAW, DESPITE THE EXISTENCE OF NUMEROUS MATERIAL ISSUES OF FACT IN DISPUTE.

A. By Misapplying Appleman's Rule, The Trial Court Erroneously Found That The Virus Was The "Predominant Cause" Of [Plaintiffs'] Losses.

B. Plaintiffs Submitted On The Motions Below Numerous Misrepresentations About The Virus Exclusion That ISO Made To State Insurance Regulators, Which The Trial Court Erroneously Ruled Were Not Discernible From The Motion Record.

II.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). That standard is well-settled.

[I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue

14

of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.

[Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

Whether a genuine issue of material fact exists depends on "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 523. "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

"The interpretation of an insurance contract is a question of law . . . and can be resolved on summary judgment." Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996). Certain general principles guide our interpretation of an insurance contract.

15

An insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled," with undefined terms construed in accordance with their "plain and ordinary meaning." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). "If the language is clear, that is the end of the inquiry," and courts will not "'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001)). We have long recognized "the basic notion that the premium paid by the insured does not buy coverage for all property damage but only for that type of damage provided for in the policy." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237 (1979).

Exclusionary clauses are "presumed valid if they are 'specific, plain, clear, prominent and not contrary to public policy.'" Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 528 (2012)). Policy exclusions "are typically construed narrowly with the onus 'on the insurer to bring the case within the exclusion.'" Mem'l Props., 210 N.J. at 528 (quoting Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998)). Nonetheless, if the terms of an exclusion are clear and unambiguous, we "should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990).

[AC Ocean Walk, LLC v. American Guar. & Liab. Ins. Co., ___ N.J. ___ (2024) (slip op. at 18-19).]

16

Because this coverage dispute involves "the devasting impact of COVID-19 and state governments' efforts to curb the pandemic, there have been scores of federal and state appellate-level courts that have addressed the same issues raised in this appeal." Mac Prop. Grp., 473 N.J. Super. at 26.

> The overwhelming majority of them have granted defendant insurers' motions to dismiss complaints seeking insurance coverage for business losses due to government orders barring or curtailing their operations in an effort to curb the COVID-19 pandemic because the losses were not due to physical loss or damage to their insured premises.
>
> [Id. at 26-27 (collecting cases).]

Most significantly, our Supreme Court recently interpreted identical language as the language at issue in defendants' policies and pointed out that

> [s]everal federal and state courts have . . . construed the policy language "direct physical loss" of property or "direct physical . . . damage" to property to denote either the property's destruction or its alteration rendering it unusable or uninhabitable, and have declined to extend that language beyond those parameters.
>
> [AC Ocean Walk, LLC, ___ N.J. at ___ (slip op. at 23).]

The Court concluded,

> [w]e concur with the determinations of those federal and state courts. Based on the plain terms of the policies, we conclude that in order to show a "direct physical loss" of its property or "direct physical . . .

damage" to its property under the policy language at issue, [the insured] was required to demonstrate that its property was destroyed or altered in a manner that rendered it unusable or uninhabitable.

[Id. at ___ (slip op. at 25).]

Otherwise, there is no coverage under the insurance policy. Ibid.

As a result, in AC Ocean Walk, LLC, where the insured sought coverage under its commercial property insurance policies for "direct physical loss" of or "direct physical . . . damage" to its property occasioned by the COVID-19 pandemic when it suspended operations of its casino and entertainment facilities due to the Governor's executive order mandating closure, the Court held that "Ocean Walk's COVID-19 allegations [did] not satisfy the policy language." Id. at ___ (slip op. at 26-27).

> At most, it has alleged that it sustained a loss of business during the COVID-19 government-mandated suspension of business operations because it was not permitted to use its property as it would otherwise have done. As the Third Circuit observed with respect to the complaint dismissed in [Wilson v. USI Ins. Serv. LLC, 57 F.4th 131 (3d Cir. 2023)] -- in which the plaintiff businesses "lost the ability to use their properties for their intended business purposes" by virtue of government orders -- such an allegation "is completely divorced from the physical condition of the premises," given that the properties were "intact and functional" and were "not destroyed in whole or in part." 57 F.4th at 142-43. The Appellate Division rebuffed a similar argument in Mac Property, noting that the insured

businesses "would have been able to continue functioning as a dine-in restaurant, bakery, childcare and learning center, or gym without interruption had Governor Murphy not issued his [executive orders]," given that none of the facilities needed repairs due to damage or required relocation. 473 N.J. Super. at 23. Here, absent the executive orders, Ocean Walk would have been able to use its property for casino and other entertainment functions with no suspension of its operations.

[AC Ocean Walk, LLC, ___ N.J. at ___ (slip op. at 26-27) (second alteration in original) (footnote omitted).]

The Court also determined that "the deficiency in [Ocean Walk's] allegations [could not] be remedied by discovery," id. at ___ (slip op. at 29),[6] and the Court's holding "comport[ed] with the vast majority of decisions by federal and state appellate courts that have addressed that issue," id. at ___ (slip op. at 27).

Likewise, here, because plaintiffs have not alleged any direct physical loss or damage to their facilities due to COVID-19 related government closures, as those terms have been defined in AC Ocean Walk, LLC, plaintiffs are not entitled to coverage for their business losses under any of the policies regardless of whether the virus exclusion applied. We therefore affirm Judge Lesnewich's decision granting defendants' summary judgment. Given our conclusion, we

---

[6] Unlike this case, procedurally, AC Ocean Walk, LLC was adjudicated on a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e), before discovery was even conducted. Id. at ___ (slip op. at 10).

A-1910-21

need not address plaintiffs' remaining arguments, which we previously rejected in Mac Property Group LLC, 473 N.J. Super. at 33, 40 (rejecting regulatory estoppel as a bar to the enforcement of the virus exclusion, and holding that the COVID-19 virus, rather than the executive orders, was "the efficient proximate cause of plaintiffs' losses," thus precluding coverage under the virus exclusion).

As we stated in Mac Property Group LLC,

> We recognize that COVID-19 has caused overwhelming economic losses to untold businesses and individuals dependent on those businesses in our state, nation, and the world. Nevertheless, in the context of the issues presented in this appeal, plaintiffs' insurance claims are restricted by the clear and plain meaning of their insurance policies, which we cannot rewrite to cover their unfortunate losses.
>
> [Id. at 41.]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1910-21