**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2748-24

ORLANDO SOTO AREVALO,

    Plaintiff-Appellant,

v.

DARLA ENTERPRISES, LLC,

    Defendant,

and

ROYAL RESTORATION AND
CONSTRUCTION, LLC,

    Defendant-Respondent.

_____

UTICA FIRST INSURANCE
COMPANY,

    Plaintiff-Respondent,

v.

ORLANDO SOTO AREVALO,

    Defendant-Appellant,

and

DARLA ENTERPRISES, LLC,

      Defendant,

and

ROYAL RESTORATION AND
CONSTRUCTION, LLC,

      Defendant-Respondent.

_____

Submitted April 23, 2026 – Decided May 14, 2026

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5047-22.

Ginarte Gonzalez Winograd, LLP, attorneys for appellant (Robert J. Ciampaglio, Jr., on the brief).

Farber Brocks & Zane LLP, attorneys for respondent Utica First Insurance Company (David J. Bloch, on the brief).

PER CURIAM

Defendant Orlando Soto Arevalo appeals from an April 29, 2024 order granting summary judgment in favor of plaintiff Utica First Insurance Company (Utica) finding Utica had no duty to indemnify "any claims involving . . .

Arevalo" and "owes no coverage obligations" relative to any claim involving him.[1] We affirm.

I.

Arevalo was an employee of defendant Royal Restoration and Construction, LLC's (Royal) subcontractor, MJM Contracting Services, LLC. On September 23, 2020, he was working on a residential construction site, assisting in the demolition of a home. As part of the demolition process, he was tasked with removing the home's roof. While Arevalo was working on the roof, a piece of wood on which he was standing broke, causing him to lose his balance and fall, resulting in injuries.

In December 2020, Arevalo filed a complaint, Docket No. L-8835-20, against Darla Enterprises, LLC (Darla)[2] and Royal, asserting claims of negligence based upon alleged violations of construction safety standards. The parties proceeded with discovery in that action.

Meanwhile, Royal sought coverage for Arevalo's lawsuit under its commercial insurance policy with Utica. In August 2022, Utica filed a

---

[1] Arevalo was the plaintiff in the underlying personal injury action, which was consolidated with the declaratory judgment action, where Utica was the plaintiff and Arevalo was the defendant. Utica was not a party in the underlying action.

[2] Darla was later dismissed on summary judgment.

A-2748-24

declaratory action, Docket No. L-5047-22, against Arevalo, Royal, and Darla, disclaiming coverage for Royal, citing a "Roofing Operation Specific Exclusion Endorsement" (Roofing Exclusion) in the policy. The Roofing Exclusion provides:

> It is hereby understood and agreed that such insurance as is afforded by Coverage L – Bodily Injury Liability and Property Damage Liability and Coverage N – Products/Completed Work does not apply to Bodily Injury, Property Damage, Products or Completed Work arising out of any **Roofing Operations**.
>
> **Roofing Operations** is defined herein as any work involving, in whole or in part, the repair, removal, replacement[,] and/or recovering of any existing roof, or any part or section thereof.

Thereafter, the trial court consolidated the cases "for [the] purposes of discovery only." Utica subsequently moved for summary judgment. Royal opposed the motion, and Arevalo joined in opposing Utica's motion. The trial court granted Utica's motion for summary judgment on April 29, 2024. It rendered an oral decision stating:

> Applying the [Roofing Exclusion], . . . the [c]ourt finds [it] is not ambiguous when interpreted in conjunction with the definitional provision. It is specific, it's plain, it's clear, and [it] is not contrary to public policy.
>
> The [Roofing Exclusion] states specifically coverage does not apply to bodily injury . . . arising out of any roofing operations. The definition provision

4

provides that roofing operations – [which i]s highlighted[ and] . . . bold[ed] . . . – . . . refers to the repair, removal, replacement[,] and/or recovering of any existing roof or any part or section thereof. . . . [I]nterpret[ing] that provision in accordance with its plain . . . meaning, . . . coverage does not extend to liability for bodily injury claims that arise out of the removal of any existing roof or any part thereof. . . . [I]f you have to demolish a property[,] you're removing the roof [of] the property.

As to the doctrine of reasonable expectation[,] . . . New Jersey courts have . . . recognized that an insured's reasonable expectation should not be considered where the policy is plain . . . in its meaning. That's <u>Mac Property Group [LLC & The Cake Boutique LLC v.] Selective Fire & Casualty Insurance Company</u>, 473 N.J. Super. 1, 18 (App. Div. 2022).

. . . [T]he doctrine of reasonable expectations is [also] less applicable to commercial contracts[.] [T]he reasonable expectation of the insured here, Royal, does not apply because the exclusionary provision is unambiguous[;] . . . it is clear[,] . . . it is . . . a commercial policy, and it indicates that the commercial liability coverage is hereto the business owner.

. . . .

The [Roofing Exclusion] here says the coverage does not apply to bodily injury, property damage, [or] products or completed work arising out of any roofing operation . . . . The phrase "arise out of" is defined to mean ["]originating from, growing out of, or having a substantial nexus.["] That's [<u>American</u>] <u>Motorist[s]</u> <u>Insurance Company [v. L-C-A Sales Company]</u>, 155 N.J. 29, 35[ (1998)].

5

Here[,] . . . Arevalo was engaged in removing the existing roof as part of a total demolition of the home. In the process of removing the roof[,] a piece of the roof broke[,] and . . . Arevalo fell. He . . . sustained bodily injuries[,] . . . [and] thus[,] his injuries arose out [of] the [Roofing Exclusion] as defined by the policy. . . .

. . . [T]he job to be performed on the day of the accident was the removal of a structure down to the foundation. A structure removal has to include the removal of the existing roof to the home, [and] . . . Arevalo has already testified, [and] the [c]ourt has considered that information[,] . . . [he was] in the process of removing that roof and trying to complete the removal prior to his accident. This, the [c]ourt finds, falls squarely within the definition as provided by the policy.

II.

Before us, Arevalo argues the trial court erred in ruling the Roofing Exclusion applied to his accident because the work being performed was a complete demolition of the existing residence and was not the removal and replacement of a roof. He contends Utica's characterization of the razing of an entire structure as a roofing operation was designed to deny Royal coverage. He maintains the insurance policy "provide[d] both bodily injury and property damage liability coverage generally to contractors," and it was therefore "reasonable" for Royal to expect it would be afforded bodily injury coverage under the circumstances and the Roofing Exclusion would not apply. He notes

6

Utica's senior claims examiner "confirmed as much when he determined that the subject [Roofing Exclusion] did not apply," and Utica further confirmed "that simply 'doing . . . work up on the roof' does not in and of itself trigger the [Roofing Exclusion]." (Omission in original). Arevalo also asserts the exclusion was ambiguous because doing demolition work is not the same as "performing roofing operations" and should be construed narrowly.

Furthermore, Arevalo contends Utica did not satisfy its burden to bring the underlying facts within the scope of the Roofing Exclusion. Specifically, he claims the Roofing Exclusion "did not afford notice that demolition work that . . . included demolishing [a] roof atop [a] structure . . . was excluded from coverage," and "[t]here is no indication in the [p]olicy that demolishing the roof of a house would be excluded from coverage." He asserts "[t]he name of the exclusion . . . makes clear that it encompasses true roofing work, not demolition of the house on which the roof rests." Arevalo argues the Roofing Exclusion is ambiguous and that it must therefore be resolved in favor of Royal.

"We review a grant of summary judgment de novo, applying the same standard as the trial court." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019). By that standard, summary judgment should be granted "when the pleadings, depositions, answers to interrogatories[,] and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995)) (internal quotation marks omitted).

The "[i]nterpretation of an insurance policy . . . presents a legal question, which we review de novo." Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, 450 N.J. Super. 400, 406 (App. Div. 2017). "In assessing the meaning of provisions in an insurance contract, courts first look to the plain meaning of the language at issue." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017). "If the language is clear, that is the end of the inquiry." Ibid. (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "Thus, 'in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased.'" Ibid. (quoting Chubb Custom Ins., 195 N.J. at 238) (internal quotation marks omitted). Notably, "an 'insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants.'" Fed. Ins. Co. v. Campbell Soup Co., 381 N.J. Super. 190, 195 (App. Div. 2005) (quoting Powell v. Alemaz, Inc., 335 N.J. Super. 33, 44 (App. Div. 2000)).

8

When a policy is unclear, ambiguities are generally resolved in favor of the insured. Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001). This is known as the doctrine of contra proferentem. See Oxford Realty Grp. Cedar, 229 N.J. at 208. "[O]nly genuine interpretational difficulties will implicate the doctrine that requires ambiguities to be construed favorably to the insured." Progressive Cas. Ins. Co., 166 N.J. at 273-74. "A 'genuine ambiguity' arises only 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Id. at 274 (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)).

However, "[s]ophisticated commercial insureds[] . . . do not receive the benefit of having contractual ambiguities construed against the insurer." Oxford Realty Grp. Cedar, 229 N.J. at 208. "Contra proferentem is a consumer-protective doctrine only available in situations where the parties have unequal bargaining power." Ibid. (quoting Pacifico v. Pacifico, 190 N.J. 258, 268 (2007)) (internal quotation marks omitted).

"The doctrine of reasonable expectations is a related doctrine [and also] applie[s] in cases where an ambiguity is alleged." Ibid. Under that doctrine, the court gives effect to the "reasonable expectations" of the insured for the purpose of rendering a "fair interpretation" of the boundaries of the coverage. DiOrio v.

N.J. Mfrs. Ins. Co., 79 N.J. 257, 269 (1979).  But, "[s]imilar to the doctrine of contra proferentem, the doctrine of reasonable expectations is less applicable to commercial contracts."  Oxford Realty Grp. Cedar, 229 N.J. at 208.

Exclusionary clauses are "presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'"  Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)).  "Policy exclusions 'are typically construed narrowly with the onus on the insurer to bring the case within the exclusion.'"  AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., 256 N.J. 294, 312 (2024) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 528 (2012)) (additional internal quotation marks omitted).  In other words, the insurer bears the burden of establishing an exclusionary provision of the policy applies.  Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022).  Nevertheless, "[c]ourts must be careful not to disregard the 'clear import and intent' of a policy's exclusion, and we do not suggest that 'any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage.'"  Merck & Co., Inc. v. Ace Am. Ins. Co., 475 N.J. Super. 420, 435 (App. Div. 2023) (quoting Flomerfelt, 202 N.J. at 442).

As to the phrasing of the policy, "[t]he critical phrase 'arising out of,' which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation" and defined to mean "conduct 'originating from,' 'growing out of[,]' or having a 'substantial nexus' with the activity for which the coverage is provided." Am. Motorists Ins. Co., 155 N.J. at 35 (quoting Records v. Aetna Life & Cas. Ins., 294 N.J. Super. 463, 468 (App. Div. 1996)). "This construction applies whether the phrase appears in a coverage grant or an exclusion." Mist Pharms., LLC v. Berkley Ins. Co., 479 N.J. Super. 126, 140 (App. Div. 2024).

Pursuant to these principles, we affirm substantially for the reasons expressed in the trial court's thorough and well-reasoned opinion. We add the following comments.

The trial court correctly determined Arevalo's injury arose out of roofing operations as set forth in the policy. The phrase "arising out of any Roofing Operations" in the exclusion refers to any conduct resulting in bodily injury that occurred while Arevalo was engaged in roofing operations or work that has a substantial nexus to roofing operations. See Am. Motorists Ins. Co., 155 N.J. at 35; Mist Pharms., LLC, 479 N.J. Super. at 139. In other words, the applicability of the Roofing Exclusion does not depend on whether the injured individual was

11

specifically employed as a roofer but rather whether the injured individual was performing "any work" involving roofing operations, such as the removal of an existing roof.

We are likewise unpersuaded by Arevalo's contention the Roofing Exclusion does not apply because the removal of the existing roof was part of a larger demolition project. The exclusion does not limit its application in the context of complete demolition. Rather, by its express terms, "roofing operations" includes "any work" involving, "in whole or in part," the "removal" of a roof. Arevalo acknowledged he was "working on removing the roof" when injured. Lastly, Arevalo's assertion the claim manager initially did not believe the exclusion applied is unavailing because the information available at that time suggested Arevalo was on a ladder removing siding, which turned out to be inaccurate.

To the extent we have not specifically addressed any remaining arguments raised by Arevalo, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

12