NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1286-22

MIST PHARMACEUTICALS,
LLC,

       Plaintiff-Respondent,

v.

BERKLEY INSURANCE
COMPANY,

       Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 9, 2024**
>
> **APPELLATE DIVISION**

Argued January 30, 2024 – Decided July 9, 2024

Before Judges Rose, Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey,
Law Division, Union County, Docket No. L-3329-17.

Adam M. Smith argued the cause for appellant
(Coughlin, Midlige & Garland, LLP, attorneys; Adam
M. Smith and Michael Edward Hrinewski, of counsel
and on the briefs; Tanya M. Mascarich, on the briefs).

Lynda Anne Bennett argued the cause for respondent
(Lowenstein Sandler, LLP, attorneys; Lynda Anne
Bennett, Eric Jesse and Alexander B. Corson, on the
brief).

The opinion of the court was delivered by

SMITH, J.A.D.

In this appeal we consider, as a matter of first impression, the operation of capacity exclusion language in a directors and officers commercial insurance policy where the insured director/officer is alleged to have engaged in wrongful corporate acts in a dual capacity: first, acting in an official capacity as a director/officer of the insured business; and second, in an official capacity as a director/officer of an uninsured business.

Defendant Berkley Insurance appeals from six trial court orders including: a December 5, 2018 order granting Mist Pharmaceutical's motion for partial summary judgment, declaring Berkley's ongoing duty to defend Mist in the underlying action and a January 9, 2019 order denying Berkley's motion for reconsideration; an April 22, 2019 order granting Mist's motion for counsel fees; a July 7, 2021 order denying Berkley's motion for summary judgment; an October 12, 2022 order granting partial summary judgment to plaintiff Mist, finding Mist was covered under Berkley's D&O policy and Berkley was responsible for indemnification; and the trial court's November 18, 2022 final judgment order, awarding Mist the remaining policy limit, prejudgment interest, and counsel fees.

In its October 12 order, applying Fireman's Fund Insurance Co. v. Security Insurance Co. of Hartford, 72 N.J 63 (1976), the trial court found Berkley's refusal to provide Mist consent to settle multiple business lawsuits

unreasonable. The trial court thus ordered coverage as a matter of law. Because it used Fireman's Fund as the basis for its order compelling coverage, the court did not consider the effect of the capacity exclusion on this record. We distinguish Fireman's Fund, concluding the policy exclusion applies to preclude coverage, and we reverse the trial court's orders for the reasons that follow.

I.

Mist was named as a party to an action brought by CelestialRX Investments, LLC in Delaware chancery court on November 20, 2015 (the Delaware action). CelestialRX Invs., LLC v. Krivulka, et al., No. 11733-VCG, 2017 Del. Ch. LEXIS 22 (Del. Ch. Jan. 31, 2017).[1] Other named parties included Joseph Krivulka, Akrimax Pharmaceuticals, LLC (Akrimax) and various other Krivulka Family Entities (KFEs). Celestial alleged in its twelve-count complaint that Krivulka, one of three Akrimax directors, engaged in a

---

[1] Although we generally do not cite an unpublished opinion, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3, permitting citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law." See Zahl v. Hiram Eastland, Jr., 465 N.J. Super. 79, 86 n.1 (App. Div. 2020). Here, the Delaware court's opinion provides a concise factual and procedural history of the alleged scheme which serves as the background for this litigation.

scheme of self-dealing which defrauded Celestial.[2] The Delaware court summarized the allegations this way:

> Krivulka improperly inserted various entities that he controlled or was invested in . . . as middlemen between Akrimax and other drug companies from whom Akrimax sought to receive drug rights. The [m]iddlemen [e]ntities received a cut of the sales or marketing performed by Akrimax. The favorability of the terms under which the [m]iddlemen [e]ntities were interposed between the company and third parties is heavily disputed.
>
> [CelestialRX, No. 11733-VCG at *2.]

Mist was identified as one of the "middlemen entities." At all relevant times, Krivulka was the Chairman of Mist's board, and held greater than a ninety percent interest in the company. Krivulka also controlled other middlemen entities, including Mist Partners, LLC and Mist Acquisition, LLC. These other businesses were not insured by Berkley.

Mist was a covered insured under a Directors and Officers Liability insurance policy (D&O policy) through Berkley with a $2 million policy limit. The policy term ran from April 8, 2014 to November 30, 2015. Under the D&O policy, Mist was insured for loss arising from claims that were both

---

[2] Celestial owned a forty-nine percent share of voting units for Akrimax and Krivulka and Leonard Mazur each owned a twenty-five percent share.

A-1286-22

made and reported during the policy period, for any actual or alleged wrongful act. The policy defined a wrongful act as follows:

> 1. [W]ith respect to Insured Persons[,] any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Insured Persons in their respective capacities as such, or any matter claimed against them by reason of their status as Insured Persons, or any matter claimed against them arising out of their serving as a director, officer, trustee or governor of an Outside Entity in such capacities, but only if such service is at the specific request or direction of the Insured Entity, or

> 2. [W]ith respect to an Insured Entity[,] any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Insured Entity.

The policy also contained certain exclusions, including a "capacity exclusion," which stated:

> [T]he Insurer shall not be liable to make any payment for Loss in connection with a claim made against any Insured:

> . . . .

> G. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any Wrongful Act of an Insured Person serving in their capacity as director, officer, trustee, employee, member or governor of any other entity other than an Insured Entity or an Outside Entity, or by reason of their status as director, officer, trustee, employee, member or governor of such other entity.

> [(Emphasis added).]

A-1286-22

There are numerous pharmaceutical business transactions at issue in the Delaware action, however, two transactions relevant to Mist are the 2011 "Primlev Agreement" and the 2012 "InnoPran Agreement." In each transaction, Mist entered into a marketing rights agreement with a third party to acquire distribution rights for the drugs Primlev and InnoPran. Pursuant to the terms of the agreements Mist assigned the respective drugs' distribution rights to Akrimax; in exchange, Akrimax bore all costs and expenses associated with commercialization of each drug. Plaintiffs in the underlying action alleged that the insertion of Mist as a "middleman" in these transactions lacked a substantive business purpose and was done because Krivulka's personal interest in Mist was greater than his interest in Akrimax. The record shows that the favorability of the terms of the agreements were heavily disputed by the parties.

In 2018, Krivulka passed away prompting Celestial to file suit in New Jersey (the New Jersey action) seeking, among other things, a stay of the distribution of Krivulka's estate. Celestial also filed suits in Connecticut and Delaware to reform certain related business agreements and preserve Celestial's rights in the reformation actions. Together, the Delaware action, New Jersey action, and the reformation actions constitute the "underlying actions."

A-1286-22

On March 9, 2016, Berkley sent Mist a reservation of rights letter under the policy, reserving a denial of coverage on several grounds. The letter stated in pertinent part:

> [C]overage for Krivulka is limited to any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act in his capacity as the chairman of Mist Pharma. Coverage is therefore not available for Krivulka for allegations pertaining to his roles with Mist Acquisition, Mist Partners, Akrimax, or any other entity. <u>We further reserve Berkley's rights under Exclusion G.</u>
>
> [(Emphasis added.)]

The letter continued:

> [T]he allegations in the complaint pertain almost exclusively to the transfer and/or acquisition of the Tirosint license from Akrimax to Mist Acquisition. Mist Acquisition is not a Policy Insured. The allegations against Mist Pharma, and Krivulka in his capacity as a director of Mist Pharma are minimal and ancillary. Accordingly, Berkley has agreed to pay/reimburse 10% of the legal fees incurred . . . [and] moving forward."

The undisputed record shows that, as early as March 2016, Berkley notified Mist the capacity exclusion may apply to either bar or limit coverage.

On July 6, 2017, Mist advised Berkley of an upcoming mediation with Celestial and requested settlement authority as per the policy. In response, Berkley wrote Mist again, highlighting potential bars to liability coverage, and expressly reserving its rights under the capacity exclusion, Exclusion G.

7

Berkley also advised Mist it was not obligated to continue its participation in Mist's or Krivulka's defense, finding the underlying disputed claim arose prior to the policy period, as early as 2013.

In response, Mist filed a declaratory judgment action seeking coverage from Berkley under six theories: breach of contract; duty to defend; duty to indemnify; bad faith; estoppel for failure to timely deny coverage; and estoppel for failure to inform Mist of its right to reject defense. The trial court ordered Mist to provide Berkley with the Delaware action-related discovery. Mist turned over 12,000 documents. After the close of discovery, the trial court granted partial summary judgment to Mist, finding "[t]he clear, and now fully developed[] record along with Mist's reasonable expectations, confirm that there was no [c]laim to report in 2013." The court found Berkley had a duty to defend Mist.

Thereafter, while participating in settlement negotiations, Mist sought consent to settle and indemnification from Berkley. When Berkley refused both requests, Mist sought Berkley's waiver of the "consent to settle" provision in the policy to resolve the underlying actions while preserving the coverage issue. Mist also provided Berkley with a liability analysis which stated in pertinent part:

> [P]laintiffs' claims generally threaten joint-and-several liability, so that even if the claims were alleged

against only one of the Krivulka Defendants (instead of multiple Krivulka Defendants as Plaintiffs have pled), the legal fees and expenses necessary to defend against the claim would generally be the same. There therefore seems little benefit in attempting to estimate allocations among different Krivulka Defendants because of the imprecise nature of such an exercise coupled with the overlapping defense costs and overlapping liability exposure across claims and defendants.

In subsequent correspondence, Mist summarized its potential exposure in the underlying actions, detailing the theories of liability and explaining "[o]ne advantage that [p]laintiffs possess is that they are able to argue two different bases for liability against Mist Pharmaceuticals: both as independent actor participating in the alleged acts and as alter egos of Joseph Krivulka under a veil-piercing theory."

Berkley countered that Mist still had not provided it the information needed to justify issuing consent to settle or justify contribution to settlement. Berkley rejected Mist's liability analysis. In a letter dated February 18, 2020, Berkley stated its position firmly:

Mist Pharmaceuticals must agree to provide additional information to Berkley so that Berkley can perform its own assessment of Mist Pharmaceuticals' exposure with regard to the underlying claim. If Mist Pharmaceuticals is prepared to provide this information or identify where the information can be found in materials previously provided, we can move forward with a mediation.

9

Mist insisted that the approximately 12,000 pages of discovery, the related correspondence between the two parties, and the ongoing settlement negotiations were sufficient for Berkley to provide its informed consent to settle.

On October 8, 2020, the Delaware court approved a $12 million global settlement covering all pending underlying actions, allocating twenty-five percent liability to Mist. On November 6, 2020, Mist moved in the Law Division for partial summary judgment on its declaratory judgment action, and Berkley cross-moved for summary judgment. The trial court denied both motions.

Next, Mist deposed Berkley's corporate counsel, Carol Threlkeld, and in May 2022, moved for reconsideration of the court's order denying its partial summary judgment motion seeking indemnification. Berkley again cross-moved, this time supplying Threlkeld's July 15, 2022 affidavit.

After argument, the trial court granted Mist's motion for reconsideration. The court also struck Threlkeld's affidavit from the record. In a statement of reasons accompanying the order, the court made findings.

First, the court found Threlkeld's affidavit contradicted her prior deposition testimony. As Berkley was bound to Threlkeld's deposition testimony, the court reasoned her affidavit could not support one of Berkley's

A-1286-22

main arguments on reconsideration—that it conducted a good-faith claim investigation.

Next, the court found:

> [I]n the absence of competent evidential facts to the contrary, . . . Berkley's continued refusal to contribute to the [g]lobal [s]ettlement was a breach of its duty to indemnify Mist because, under the Policy, Berkley promised to pay "all Loss [i.e., "settlements"] . . . arising from any Claim . . . for any actual or alleged Wrongful Act.

In addition, the court made findings which established the reasonableness of the global settlement allocation to Mist, among them: the Mist Insureds' potential liability under theories pursued by Celestial, exposing the Mist Insureds to joint and several liability; Krivulka's dominion and control over Mist; the amount of the royalty payments allegedly diverted from Akrimax to KFEs; the impact of Akrimax not having access to the diverted royalty payments; the complexity of litigating the underlying actions in multiple jurisdictions; Celestial's claimed damages of more than $300 million; Mist's estimated liability exposure of $30 million; defendants' failure to file an answer in any of the actions after nearly five years of litigation in multiple jurisdictions; and Mist's projection of substantial counsel fees required to defend itself in the ongoing underlying actions.

Considering the record and using these findings, the court found Berkley's withholding consent to settle was unreasonable under Fireman's Fund. Regarding the capacity exclusion, the court found it "need not reach the [issue] because . . . a recalcitrant insurer that breaches its policy can no longer look to contractual defenses to avoid coverage." In a subsequent order, the trial court awarded counsel fees to Mist.

On appeal, Berkley argues the trial court erred when it: failed to apply the capacity exclusion; struck Threlkeld's affidavit; and awarded Mist counsel fees.

## II.

In reviewing the grant or denial of summary judgment, the standard of review is de novo. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). "We ask first if, viewing the evidence in the light most favorable to the nonmoving party, genuine issues of material fact exist." New Gold Equities Corp. v. Jaffe Spindler Co., 453 N.J. Super. 358, 372 (App. Div. 2018) (citing Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 41 (2012)). If not, this court is required to "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)); see

12

also <u>Bhagat v. Bhagat</u>, 217 N.J. 22, 38 (2014) ("[T]his [c]ourt must review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law.").

## III.

## A.

The initial question is whether the trial court correctly applied <u>Fireman's Fund</u> to preclude Berkley from excluding coverage based on the policy's capacity exclusion language.

In <u>Fireman's Fund</u>, our Supreme Court held that where a policy has a consent to settle provision, an insurer has a duty to not unreasonably withhold consent to settle. 72 N.J. at 69-70. When an insurer breaches this duty, it is liable for indemnification in the amount of the settlement. <u>Ibid.</u> The Court stated:

> [T]he considerations of good faith and fair dealing require that the insurer make such an investigation within a reasonable time. If the insurer delays <u>unreasonably</u> in investigating and dealing with a claim asserted against its insured, the insured may make a good faith reasonable settlement and then recover the settlement amount from the insurer, <u>despite the policy provision conditioning recovery against the insurer on its policy on the prior entry of a judgment against the insured or acquiescence by the insurer in the settlement.</u>

13

[Id. at 73 (internal citations omitted) (emphasis added).]

"While the right to control settlements reserved to insurers is an important and significant provision of [a] policy contract, it is a right which an insurer forfeits when it violates its own contractual obligation to the insured." Id. at 71 (internal citations omitted). To this end, an insurer must uphold its contractual duties before "seeking to rely on the powers reserved to it by the language of the policy contract." Id. at 72.

The Court also noted that whether an insurer's breach is "that of its express obligation to defend, of its implied obligation to make a timely investigation of the claim or of its implied obligation to exercise, in good faith and with concern for the interests of the insured, its reserved power with respect to settlements," damages are essentially the same. Id. at 78. "[T]he measure of the insured's damages is either the amount of the judgment entered against the insured in the negligence action or the amount paid by the insured in making a reasonable good faith settlement of the negligence action before trial." Ibid. "Where the measure of recovery is the amount paid in settlement, the defaulting insurer receives all the protection to which it is entitled from the requirement that the insured, in establishing his damages, prove—as was done here—that the settlement was made in good faith and for a reasonable amount." Id. at 79.

14

We note similarities to the facts in Fireman's Fund. Mist's allocation of the global settlement went beyond its policy limit and was also significantly below the potential liability exposure it was facing. Also, Berkley refused to provide Mist consent to settle. However, unlike Fireman's Fund, Berkley asserted withholding consent to settle was reasonable given the relevant facts—that the global settlement represented the separate interests of multiple entities not insured under the policy, and Berkley reserved its rights under the capacity exclusion repeatedly from its earliest communications with Mist regarding the claim. These are material distinctions that the trial court should have considered, and the court's legal analysis would have been better informed if it had first addressed the application of the policy's capacity exclusion.

## B.

Turning to the exclusion provision, we begin with well-settled jurisprudence. "Insurance policies are reviewed using contract principles, and the 'agreement "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."'" Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552, reconsideration denied, 251 N.J. 579, 279 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012)). As such, the terms of insurance contracts are to be given their plain

15

and ordinary meaning.  Ibid.  "Where a policy contains no ambiguities, 'courts should not write for the insured a better policy of insurance than the one purchased.'"  Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 255 (App. Div. 2023) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 596 (2001)).  Consequently, an insurance policy will not be construed to indemnify an indemnitee against losses resulting from its own independent fault, active wrongdoing, or tortious conduct, unless such an intention is expressed in unequivocal terms in the policy.  New Gold Equities Corp., 453 N.J. Super. at 386-87.

Policy exclusion interpretation is "a question of law subject to de novo review."  Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 46 (App. Div. 2010).  "Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'"  Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)).  It is the insurer's burden "to bring the case within the policy exclusion."  Norman Int'l, 251 N.J. at 552 (quoting Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 399 (1970)).  If such an exclusion is conditioned on a "causal link" we first look to the nature and extent of the link as "evaluating that link will determine the meaning and application of the exclusion."  Ibid. (quoting Flomerfelt, 202 N.J. at 442-43).  We have not

A-1286-22

analyzed a capacity exclusion paragraph in a commercial D&O policy on facts like these before. However, there is guidance for exclusions with similar qualifying language. In Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29 (1998), the Supreme Court explained:

> The critical phrase "arising out of," which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. "The phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided."
>
> [Id. at 35 (quoting Records v. Aetna Life & Cas. Ins., 249 N.J. Super 463, 468 (App. Div. 1996)).]

This construction applies whether the phrase appears in a coverage grant or an exclusion. See ibid. (holding "arising out of and in the course of employment" language contained in policy's exclusion precluded coverage for employee's wrongful discharge claim); see also Prudential Prop. & Cas. Ins. Co. v. Brenner, 350 N.J. Super. 316, 322 (App. Div. 2002) (concluding homeowner's murder fell under policy exclusion for injuries "'arising out of the use, sale, manufacture, delivery transfer, or possession' of illegal drugs").

Recently, our Supreme Court applied a policy exclusion for liability "arising out of, related to, caused by, contributed to by, or in any way connected with . . . [a]ny operations or activities performed by or on behalf of

any insured" in certain specifically identified counties. Norman Int'l, 251 N.J. at 542. Deciding for the insurer, the Court held "a causal relationship between [the insured's] conduct and [the] plaintiff's injuries was not required in order for the exclusionary clause to apply; rather, any claim 'in any way connected with' [the insured's] operations or activities in a county identified in the exclusionary clause [was] not covered under the policy." Ibid.

The Eleventh Circuit, considering a Georgia insurance coverage dispute involving similar capacity exclusion language, gives us further insight. In Langdale Co. v. National Union Fire Ins. Co. of Pittsburgh, Penn., 609 Fed. Appx. 578 (11th Cir. 2015), the defendants, who were directors, officers, and majority shareholders of a family-owned corporation with multiple business holdings, were sued for breach of their fiduciary duty to certain minority shareholders of the corporation. The defendants were also trustees of a family trust in which the plaintiff/minority shareholders were beneficiaries. The family trust owned nearly twenty-five percent of the holding company's stock. Id. at 580. In their capacity as trustees, the defendants misrepresented the value of the trust's shares to the plaintiffs to persuade them to sell the stock back to the holding company at a substantial discount. Ibid. After being sued in their capacity as directors and officers of the holding company, the

18

defendants sought coverage under the company's D&O policy. The insurance carrier disclaimed coverage.

The D&O policy exclusion in <u>Langdale</u> was Exclusion 4(g). It stated:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against an Insured:
>
>    . . . .
>
> (g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Individual Insured serving in any other capacity, other than as an Executive or Employee of a Company, or as an Outside Entity Executive of an Outside Entity.
>
> [<u>Langdale</u>, 609 Fed. Appx. at 586.]

The Eleventh Circuit concluded that the insureds' "wrongful acts as [insured company] directors arose out of their wrongful acts as trustees of the Trust." <u>Id.</u> at 594. Because the wrongful acts arose out of their conduct in a capacity other than as executive of the insured company, the exclusion applied. <u>Id.</u> at 596. We adopt Eleventh Circuit's sound interpretation of the <u>Langdale</u> D&O policy's capacity exclusion.[3] We apply its interpretation here, given the

---

[3] In addition to Georgia, a similar approach to analyzing dual capacity claims is taken by California, New York, and Pennsylvania. <u>See also</u> <u>Abrams v. Allied World Assurance Co. (U.S.) Inc.</u>, 657 F. Supp. 3d 1280, 1288 (N.D. Cal. 2023) (holding under California law, capacity exclusion did not apply to underlying fiduciary duty claims against insureds as they arose "solely from the Insureds' actions in their capacities as . . . executives" of relevant

similarity in language, operation, and effect between <u>Langdale's</u> and Berkley's capacity exclusions.

Like <u>Langdale</u>, the loss alleged by Akrimax, the plaintiff in the underlying actions against Mist and other non-insured entities, stemmed from Krivulka's self-dealing. Krivulka was acting in his capacity as both a director of Akrimax and majority shareholder of Mist. The undisputed record shows Krivulka used his position as an Akrimax director to require that Akrimax guarantee to Mist certain obligations—including over $28 million in royalties and distribution rights as well as a termination provision—without consideration. It is undisputed that Krivulka acted in a dual capacity. The record, including the 12,000 pages of additional discovery, reveals nothing to change this fact. The loss claimed by Mist against Berkley's D&O policy

_____

company); <u>L. Offs. of Zachary R. Greenhill, P.C. v. Liberty Ins. Underwriters, Inc.</u>, 147 A.D.3d 418, 420 (2017) (applying New York law, holding counterclaim allegations in underlying action clearly show capacity exclusion applies to bar coverage as conduct arose out of plaintiff's dual capacities); <u>Niagara Fire Ins. Co. v. Pepicelli</u>, 821 F.2d 216, 220-21 (3d Cir. 1987) (applying Pennsylvania law, "outside business exclusion," with language analogous to capacity exclusion, barred coverage where a lawsuit arose from an attorney acting simultaneously as both an attorney and officer or director of an uninsured business, but concluded that the exclusion did not apply to the malpractice claim against the attorney as that claim did not result from the attorney's outside business interests).

A-1286-22

arose from and could not have occurred but for Krivulka's conduct in his capacity as a director of Akrimax.

The "but for" analysis we adopt here does not require us to unpack the percentage of Krivulka's conduct attributable to his role as a director/officer at Akrimax and compare it to the percentage of Krivulka's conduct attributable to his role as a director/officer at Mist. The clear language in the policy and the jurisprudence we apply to it foster a simpler approach. It follows that Krivulka's actions constituted a sufficient basis to trigger the capacity exclusion, and thus there is no coverage under the Berkley policy. It follows that Berkley's refusal to consent to a settlement by Mist was not unreasonable. We need not reach the Threlkeld affidavit issue.

We comment briefly on Berkely's duty to defend in relation to the trial court's order awarding counsel fees to Mist. Our jurisprudence concerning an insurer's duty to defend is well-settled. See Norman Int'l, 251 N.J. at 549–50. The record shows there were disputed issues of material fact concerning whether the capacity exclusion applied to bar coverage under the policy when Mist moved for partial summary judgment on Berkley's duty to defend. The thrust of Berkley's argument on the duty to defend motion was that the claim arose prior to the policy period.

In its December 5, 2018 order, granting Mist's motion, the court found, "Mist did not receive a policy-defined '[c]laim' until the Delaware Action was filed, that Mist timely complied with the notice provision of the Berkley insurance policy at issue[,] and that Berkley ha[d] a duty to defend Mist in the [underlying a]ction." However, the court limited its ruling, and noted that its duty to defend conclusion expressly rested on the continuation of coverage. We discern no reason to disturb the December 5 order as the record shows Berkley did not raise the capacity exclusion argument until the exchange of pleadings and argument leading to the trial court's July 7, 2021 order, after addition discovery had taken place.

Consequently, we reverse the trial court's July 7 order denying Berkley summary judgment, its October 12, 2022 order granting partial summary judgment for Mist, and its November 18, 2022 order entering judgment against Berkley for the remaining policy limit, pre-judgment interest, and counsel fees. In turn, we dismiss Mist's declaratory judgment complaint, and remand for the trial court to enter judgment in favor of Berkley and determine counsel fees due and owing to Mist based on Berkley's duty to defend up to July 7, 2021.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION